UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUHIN S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C19-827 BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of his application for Supplemental Security Income, contending that the ALJ erred by misevaluating (**1**) his symptom testimony and (**2**) the opinions of a treating psychiatrist and examining psychologists. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is a 47-year old man whose primary language is Mien, immigrated from Laos in 1988, and has worked past jobs as a furniture assembler and a material handler. Tr. 41, 59–60, 557, 585. Although he alleges disability beginning in January 2010, he was previously denied benefits in September 2014, a decision that was not appealed. Tr. 30. Plaintiff filed his current SSI application on February 25, 2015, which was used as the relevant date for consideration. Tr. 31.

The ALJ determined that plaintiff has the severe impairments of **bony callus in the right shoulder, major depressive disorder, post-traumatic stress disorder ("PTSD"), and alcohol abuse disorder**. Tr. 33. The ALJ determined that plaintiff has the **residual functional capacity ("RFC") to perform light work with additional restrictions, including no loud, sudden banging noises and a limitation to simple, routine tasks with simple, short instructions.** Tr. 35–36. Although the ALJ found that plaintiff could not return to his past work, he determined that plaintiff could perform other work that exists in significant numbers in the national economy. Tr. 41–43. The ALJ therefore concluded that plaintiff was not disabled. Tr. 43.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

On appeal, plaintiff challenges the ALJ's evaluation of his testimony and the medical opinions only with respect to the impact of PTSD and depression. Plaintiff has not, however, demonstrated that the ALJ's decision was unsupported by substantial evidence, the result of harmful legal error, or unreasonable.

1. **Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to discount his testimony about the severity of his mental limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The Court disagrees.

The ALJ discounted plaintiff's testimony about the severity of his limitations stemming from depression and PTSD because his statements about debilitating mental limitations were inconsistent with the medical record. Tr. 38; *see* 20 C.F.R. § 416.929(c)(2)–(c)(4) (evaluating the intensity and persistence of symptoms by viewing statements, medical evidence, and other evidence). First, the ALJ noted that although his primary allegation referred to psychological impairment, clinical findings generally indicated that he was fully oriented with intact memory and good attention/concentration and insight/judgment. *Id.*; *see* Tr. 346, 389, 441, 538, 547, 569–70, 762, 773, 786. Second, the ALJ noted that when plaintiff engaged in mental-health treatment, this appeared to be successful in reducing his symptoms. Tr. 38. Plaintiff began trauma therapy with a social worker in October 2014 and initially showed low engagement. Tr. 425, 447. Nonetheless, in January 2015, plaintiff reported improvement in symptoms due to counseling and medication. Tr. 382. On March 9, 2015, plaintiff reported "that PTSD,[] Depression, and GAD symptoms, and Sleep concerns have all resolved[] and he has met his counseling[] goals." Tr. 351. However, on March 10, 2015, plaintiff told another clinician that while his PTSD symptoms had improved, he wanted to see another therapist. Tr. 346. Although plaintiff then saw Arthur Leonard Lewy, Ph.D., several times, it did not appear that he returned after a July 2015 appointment. Tr. 687, 715. Third, the ALJ noted that plaintiff's non-compliance with therapy and medication, both of which were shown to be effective, possibly stemmed from reasons not connected to depression and PTSD. Tr. 38–39. For example, plaintiff continued to present regularly to other providers, including his psychiatrist, while not showing up for therapy appointments with Dr. Lewy. Tr. 38; *see, e.g.*, Tr. 636, 687, 702. The ALJ questioned whether this reluctance to see Dr. Lewy might be connected to Dr. Lewy's choice to monitor plaintiff's

alcohol use and to discuss how not working was related to plaintiff's low mood.[1] Tr. 38–39; *see* Tr. 715. Similarly, while plaintiff stated that he was non-compliant with taking his anti-depressants due to sedative effects, he did not inform a provider of this side effect until 2017, at which time his medications were shifted, resulting in greater effectiveness. Tr. 38, *see* Tr. 772, 776, 781.

The Court finds that the inconsistency between plaintiff's testimony and the medical evidence constitutes a specific, clear and convincing reason for discounting the severity of plaintiff's allegations of debilitating depression and PTSD. Plaintiff contends that the ALJ should have concluded that normal mental status exams were consistent with debilitating mental limitations, should have focused on plaintiff's continued limitations rather than on improvement with medication, and should have considered his reasons for not taking his medications consistently. Plaintiff's arguments for a contrary interpretation of the medical evidence do not undermine the ALJ's reasonable inferences. *See Shaihabi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018). Plaintiff has not indicated how the evidence demonstrates that plaintiff's resistance to treatment was attributable to his mental impairments, rather than his personal preferences, such that the ALJ could reasonably infer that his reluctance to attend therapy and to take effective medications indicated that his mental limitations were less severe than he alleged. *See Molina*, 674 F.3d at 1114. This is not a case in which plaintiff's testimony was rejected merely because his mental limitations waxed and waned during treatment and the ALJ picked out a few isolated instances of improvement over a period of months or years to treat them as a basis for concluding plaintiff was capable of working. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1017

---

[1] In July 2015, Dr. Lewy set forth a therapeutic plan: "Pt asked to think[] further about steps he might be willing to take regarding his work[] situation. Will continue to monitor etoh use." Tr. 715.

(9th Cir. 2014). Rather, the ALJ noted, for example, the effectiveness of sleep medications that were taken sporadically even when there were no negative interactions with other drugs, Tr. 38, 441, 461, 507, 791–92; and it took years for plaintiff to report side effects from an antidepressant even though, once his medications were corrected, his symptoms of PTSD were "well-controlled," Tr. 38, 776; *see, e.g.*, Tr. 772, 781, 788. Moreover, plaintiff's testimony about the severity of his mental limitations should be viewed in the context of the ALJ's unchallenged rejection of his testimony about the severity of his physical limitations because, among other things, although he claimed he could not lift 20 pounds, during a physical exam he had full strength in his arms and normal shoulder range of motion, *compare* Tr. 71 *with* Tr. 562, and though he claimed that long-term, significant shoulder pain kept him from working, the record showed that he hunted, fished, gardened, collected mushrooms, and performed chores, Tr. 350, 455, 457, 514, 557–58, 579, 584, 586, 721, 761, 785. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (holding that factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment).

The ALJ did not harmfully err as a matter of fact or law in discounting the severity of plaintiff's testimony about his mental limitations.

2. **Medical Opinions**

Plaintiff contends that the ALJ failed to give specific and legitimate reasons for discounting the opinions of (**a**) treating psychiatrist Lorin Boynton, M.D.; (**b**) examining psychologist Marsha Hedrick, Ph.D.; (**c**) examining psychologist Geordie Knapp, Psy.D.; and

(**d**) examining psychologist David Widlan, Ph.D. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The Court disagrees.

### a. Treating Psychiatrist Dr. Boynton

In an October 2017 letter, treating psychiatrist Dr. Boynton opined that plaintiff did not have the capacity to learn new tasks or to adapt to changes in a work setting, and that he would not be able to complete a normal workday without psychological decompensation. Tr. 797–98. First, the ALJ discounted Dr. Boynton's opinion because it was based on generalizations and presumptions about plaintiff's condition. Tr. 40. Although Dr. Boynton acknowledged that her medical notes referred to plaintiff's attention and concentration as "good" and to his memory as "intact," Dr. Boynton downplayed the accuracy of her own clinical observations by pointing out that she made the statements in the context of plaintiff's attention and concentration during the appointment and his ability to report symptoms and activities since their last meeting. Tr. 797. Dr. Boynton reported that, as the treating psychiatrist, she did not conduct in-depth cognitive assessments because such assessments are generally handled by psychologists. *Id.* Thus, as the ALJ observed, Dr. Boynton based her functional assessment on generalities: patients with severe PTSD and depression "usually have significant cognitive issues when tested formally" and that these cognitive difficulties, together with the fragile emotional state that such patients have, make it very difficult for such patients to function in a work setting. Tr. 797; *see* Tr. 40.

Second, the ALJ discounted Dr. Boynton's opinion because it was unclear on what medical evidence Dr. Boynton based her conclusions. Tr. 40. Although Dr. Boynton opined that plaintiff could not learn new tasks or complete a workday without decompensation, Dr. Boynton had not herself observed any symptoms of decompensation because she began treating plaintiff three years after he had ceased all work activity, including volunteer activities. *Id.* The ALJ

observed that Dr. Boynton admitted that her own clinical notes gave no indication about this level of impairment, noted that she had not administered in-depth testing, and provided no basis for concluding that plaintiff would decompensate in a work environment. *Id.* In fact, plaintiff testified that he was let go from his last job for missing work due to leaving on a hunting trip and lack of transportation, neither of which involved any of his impairments. Tr. 40; *see* Tr. 60–61, 440. Moreover, plaintiff's mental and physical impairments were longstanding—i.e., based on a childhood physical injury and an ongoing history of depression and PTSD—and the record contained no evidence that his conditions had worsened around or after the alleged disability onset date. Tr. 40; *see* Tr. 560, 785.

The Court finds that the ALJ cited at least two specific and legitimate reasons for discounting the opinion of treating psychiatrist Dr. Boynton. *See* 20 C.F.R. § 416.927(c)(3) (providing that an ALJ will consider the supportability of all medical opinions); *see, e.g.*, *Bayliss*, 427 F.3d at 1216 (discounting a medical opinion because impairments were longstanding and did not prevent the claimant from performing numerous activities).

### b. Examining Psychologist Dr. Hedrick

In a June 2015 mental evaluation, examining psychologist Dr. Hedrick provided the following functional assessment:

> Ability to reason is adequate. Understanding and memory is somewhat impaired, particularly with regard to working memory. Sustained concentration and persistence, there may be some impairment, but this was difficult to assess. Social interaction is good. Adaptation is limited.

Tr. 558–59. The ALJ gave Dr. Hedrick's functional assessment limited weight because it was vague and because Dr. Hedrick remarked repeatedly about evaluation limitations due to

language/cultural barriers and the absence of an interpreter. Tr. 35, 39; *see* Tr. 556–59. These reasons were specific and legitimate.

First, it was reasonable for the ALJ to discount Dr. Hedrick's opinion as vague. *See, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (noting that a medical opinion may be rejected as vague, conclusory, or unsubstantiated). Dr. Hedrick neither quantified nor explained the degree of limitation when referring to plaintiff's understanding being "somewhat impaired," to "some degree" of impairment in understanding and memory, and to "limited" adaptation. Tr. 558–59. Second, it was reasonable for the ALJ to discount Dr. Hedrick's opinion for the same reason Dr. Hedrick herself did: difficulties in communication and evaluation due to language and cultural barriers. *See, e.g.*, Tr. 556–57 ("He was unable to identify anything that increased the problem. This may have been having to do with some difficulties with language and also with not understanding the concept, culturally.") *and* (noting that stream of mental activity "is difficult to assess due to language issues"), Tr. 558 ("It was not possible to assess abstract thinking because of cultural and language issues."); *see also* Tr. 559 (noting in functional assessment that there may be some impairment to sustained concentration and persistence "but this was difficult to assess").

The Court finds that the ALJ cited at least two specific and legitimate reasons for discounting the opinion of examining psychologist Dr. Hedrick.

### c. Examining Psychologist Dr. Knapp

In a March 2014 evaluation, examining psychologist Dr. Knapp checked off boxes indicating that plaintiff was severely limited with respect to communicating effectively in a work setting and completing a normal workday and work week, and was markedly limited with respect to adapting to changes, making simple work-related decisions, and asking simple questions or

requesting assistance. Tr. 335. The ALJ discounted Dr. Knapp's opinion because, among other reasons, Dr. Knapp provided no explanation for these limitations, the examination was a one-time snapshot that generated no clinical notes, and the mental evaluation did not explain the severity of the mental limitations assessed. All three reasons were specific and legitimate.

First, Dr. Knapp nowhere explained the basis for marking severe or marked limitations. *See Molina*, 674 F.3d at 1111 (noting that checkbox reports that do not contain an explanation of their conclusions may be discounted). Second, because he was reviewing eligibility for state benefits Dr. Knapp did not record clinical notes. *See* 20 C.F.R. § 416.927(c) (noting that when weighing medical opinions, an ALJ may consider nature and extent of the doctor's relationship to the claimant, the extent of familiarity with other information in the record, and the supportability of the opinion). Third, the mental status evaluation administered by Dr. Knapp returned normal results, except as to concentration where Dr. Knapp noted that "Serial 7/3's were not attempted" and plaintiff "was only able to repeat 5 digits forward and 2 backward which is slightly below average." Tr. 386. Thus, although the ALJ discounted Dr. Knapp's overall conclusions, the ALJ appears to have accepted in the RFC assessment the extent of concentration limitation supported by Dr. Knapp's mental status evaluation. *See* Tr. 36 (RFC assessment limiting plaintiff to simple, routine tasks with simple, short instructions).

The Court finds that the ALJ cited specific and legitimate reasons for discounting the opinion of examining psychologist Dr. Knapp.

### d. Examining Psychologist Dr. Widlan

In January 2016, examining psychologist Dr. Widlan reviewed Dr. Knapp's opinion and evaluated plaintiff, similarly finding on a checkbox form that plaintiff had marked limitations with respect to understanding, remembering, and persisting in tasks involving detailed

instructions, learning new tasks, adapting to changes, communicating and performing effectively in a work setting, and completing a normal workday and work week. Tr. 610–11. The ALJ discounted Dr. Widlan's opinion for, among other rationales, the same reasons he discounted Dr. Knapp's opinion: the checkbox limitations were not explicated; the one-time snapshot evaluation did not generate clinical notes; and the mental status evaluation administered by Dr. Widlan did not support the severity of mental limitations assessed. These reasons are specific and legitimate.

As with Dr. Knapp's opinion, Dr. Widlan's checkbox limitations were not well-explicated and the examination did not result in helpful clinical notes. Moreover, as the ALJ noted, Dr. Widlan found that plaintiff performed in the normal range for most elements of the mental status evaluation, and to the extent plaintiff performed below average on concentration, Dr. Widlan determined that plaintiff was still able to follow a simple three-step command and showed non-impairment on the simple trailmaking task. Tr. 41, 613. Thus, although the ALJ discounted Dr. Widlan's overall conclusions, the ALJ appears to have accepted in the RFC assessment the extent of concentration limitation supported by Dr. Widlan's mental status evaluation. *See* Tr. 36 (RFC assessment).

The Court finds that the ALJ cited specific and legitimate reasons for discounting the opinion of examining psychologist Dr. Widlan.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 27th day of December, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10